# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| v. | : | CRIMINAL NO. 24-433 |
| BRIAN ZENSZER | : | |

### UNITED STATES' SENTENCING MEMORANDUM

Defendant Brian Zenszer stands before this Court facing sentencing for his distribution and possession of child pornography, offenses he committed while employed as a police officer for SEPTA.

The defendant's calculated sentencing Guideline range in this case calls for sentence between 151-180 months of imprisonment, 60 months of which is mandatory.

**I.  BACKGROUND**

On November 6, 2024, the defendant was charged by complaint and warrant with distribution of child pornography. Thereafter, on December 5, 2024, a federal grand jury returned a 12-count indictment charging defendant Brian Zenszer with distribution and attempted distribution of child pornography, in violation of 18 U.S.C. § 2252(a)(2) and (b)(1) (Counts1-11), and possession of child pornography, in violation of 18 U.S.C. § 2252(a)(4)(B) and (b)(2) (Count12). The indictment also included a forfeiture count seeking forfeiture of the child pornography images and videos and all equipment seized from the defendant that was used to facilitate the charged crimes.

On April 30, 2025, the defendant appeared before the Honorable Harvey Bartle III and pled guilty to Counts 1 and 12 of the indictment, pursuant to a written guilty plea. The Government agreed to dismiss Counts 2-11 at the time of sentencing.

## II. FACTUAL BACKGROUND

### A. *The Initial Investigation*

On August 5, 2024, MediaLab submitted a cybertip to the National Center for Missing and Exploited Children ("NCMEC") to advise they had identified the Kik username, "MUCHBETTERTHANEMAIL," who uploaded suspected files of child pornography into his Kik account. As part of the CyberTip, Kik provided 22 unique video files that were uploaded into this account, along with limited subscriber and login history for the account. Kik also provided the IP address associated with the account which the investigation confirmed was a Comcast account registered in the defendant's wife's name to the defendant's address in Warminster, Pennsylvania.

Law enforcement confirmed that 19 videos included child pornography. The videos primarily depicted prepubescent minor girls engaging in sexual activity, such as oral sex and masturbation.

On October 2, 2024, MediaLab submitted another CyberTip to NCMEC to advise they had identified the Kik username, "JAMESDEAN140351," who uploaded suspected files of child pornography into his Kik account. As part of the CyberTip, Kik provided 17 unique video files that were uploaded into this account and shared with one or more Kik users, along with limited subscriber and login history for the account. Kik also provided the IP address associated with

---

1 Kik had shut down the MUCHBETTERTHANEMAIL account and ZENSZER had started a new account.

the account which the investigation confirmed was a Comcast account registered in the defendant's wife's name at his address in Warminster. Investigators confirmed that 15 unique videos depicted child pornography.

Agents obtained search warrants for both the "MUCHBETTERTHANEMAIL" and the "JAMESDEAN14035," accounts, and confirmed that the videos that were part of the CyberTipline reports were still contained in the accounts, as were other pornographic images and videos.

Specifically, the "MUCHBETTERTHANEMAIL" account contained a total of 230 video or image files. Of the 230 files, 32 depicted child pornography. Of the 32 files of child pornography, 22 videos and 2 images were unique, while the remaining appeared to be duplicates. The 24 unique files of child pornography depict minor girls engaging in sexual activity, to include oral sex, vaginal sex, and masturbation. Examples of the videos are described below:

- **3bf5cd6a-0b5a-4615-9f99-c0c29323d171** - an 11 second video depicting a nude, prepubescent minor girl laying on a pink blanket, while an adult male masturbates his penis and ejaculates on her face.
  - This video was listed within the **chat_platform_sent.txt** file provided by Kik. The txt file indicated MUCHBETTERTHANEMAIL sent the file to a Kik user on July 27, 2024, at 11:45 UTC from the Gallery.
- **1a77a3bc-9629-4eee-9856-97517113b1a0** - a 12 second video depicting a nude, prepubescent minor girl on her hands and knees, in front of a Hello Kitty cartoon. There is one adult male vaginally penetrating her with his penis while the minor girl engages in oral sex on a second adult male.
  - This video was listed within the **chat_platform_sent.txt** file provided by Kik. The txt file indicated MUCHBETTERTHANEMAIL sent the file to a Kik user on July 28, 2024, at 16:11 UTC from the Gallery.

5bc1f1a0-9d14-4396-9bfa-1e945659fe32 – a 51 second video depicting a nude, prepubescent minor girl with her wrists tied up and what appears to be ties around her chest, while an adult male inserts his fingers into her vagina.

- This video was listed within the **chat_platform_sent.txt** file provided by Kik. The txt file indicated MUCHBETTERTHANEMAIL sent the file to a Kik user on July 28,2024 at 16:33 UTC from the Gallery.

The MUCHBETTERTHANEMAIL account also contained numerous chats related to child exploitation such as:

- On July 21, 2024
    - KIK USER: "What is your fav? I'll try to send"
    - MUCHBETTERTHANEMAIL: "Lately I've had an itch for young"
    - KIK USER: "Nice, don't see it much?"
    - MUCHBETTERTHANEMAIL: "Never...I'm nervous to seek it"
    - KIK USER: "Yes it's dangerous"
    - KIK USER: "What you wanna see?"
    - MUCHBETTERTHANEMAIL: "IDC... Young male and female involved in anything"
    - MUCHBETTERTHANEMAIL: "Love seeing taboo and underage"
    - MUCHBETTERTHANEMAIL: "That last vid is so hot. She's incredible...with I saw her from little tits"
    - MUCHBETTERTHANEMAIL: "Any more young getting fucked? Boys or girls"
    - MUCHBETTERTHANEMAIL: "I had a vid of a boy and his little dick getting sucked by an older teen but can't find it"
    - MUCHBETTERTHANEMAIL: "Found it! Sending"
    - KIK USER: "Nice vid"

- On July 23, 2024

    - MUCHBETTERTHANEMAIL:"Have more young, but nothing violent."

- On July 24, 2024

    - MUCHBETTERTHANEMAI: "Hey...From xchange. What girl pics and vids? I'm interested to trade. Young?"

- On July 27, 2024

    - MUCHBETTERTHANEMAIL: "Nice young!"

    - MUCHBETTERTHANEMAIL: "Wow...stuffing that little pussy.

    - MUCHBETTERTHANEMAIL: "Love eating it thinking about young"

MUCHBETTERTHANEMAIL stated to other Kik users that even though he had a wife, he also had a girlfriend. MUCHBETTERTHANEMAIL sent multiple messages related to his girlfriend's 12-year-old daughter. Within the messages, MUCHBETTERTHANEMAIL indicated his girlfriend had a 12-year-old daughter that does not know he exists because his girlfriend sneaks him in and out of the house. MUCHBETTERTHANEMAIL stated in his chats that he has been in the girl's bedroom on multiple occasions while nobody is home. MUCHBETTERTHANEMAIL stated on Kik that he has masturbated on the 12-year-old daughter's bed and while using her underwear. MUCHBETTERTHANEMAIL told two different Kik users that he has a pair of the girl's underwear in his vehicle. MUCHBETTERTHANEMAIL stated he thinks of the 12-year-old girl while engaging in sex with his girlfriend.

The defendant also stated to another Kik user that he had a 16-year-old daughter and that he had a photo of her that was captured on his bedroom camera while she was getting laundry. He told the other Kik user that he has never sent it before and that this happened just yesterday.

He stated he could "background verify" that the girl is his daughter. The context of the chats indicated the other Kik user received the image, as he/she made statements such as "Oh hell yeah lol" and "Omg she's so hot." The image sent to the other user was not located in his Kik account however, the defendant indicated in his post arrest statement that he had probably sent the image via Kik.

B.     *Arrest and Statement*

Based on the investigation a search warrant was obtained for the defendant's residence, devices, and vehicle (24-mj-1805) as well as a complaint and warrant for his arrest. These were executed on November 6, 2024.

After agents Mirandized the defendant, he agreed orally and in writing to be interviewed. His interview was audiotaped. The defendant admitted to possessing and distributing child pornography and admitted that both the MUCHBETTERTHANEMAIL and the JAMESDEAN14035 Kik accounts were his. He stated that he sometimes engaged in this behavior while on duty as a Septa police officer. He further admitted to stealing his girlfriend's 12-year-old daughter's underwear and hiding it in his vehicle, although he denied that he had masturbated in her bedroom. He admitted that he had taken a screen shot from a video which depicted a topless photo of his own teenage daughter and sent it out through his Kik account. He said he had deleted the photo after having done so. He told agents he had "been into the young stuff" for only a couple of years. He provided agents with the code to access his phone and the passcode for his Telegram account.

He stated that he had been sending child pornography for the last year or two. He discussed that he had a 16-year-old daughter and a 14-year old son. He was adamant that he had never been inappropriate with his children.

The defendant's Samsung cellular phone contained evidence of the images distributed during the Kik chats and images distributed via the messaging application Telegram.

III.   **SENTENCING CALCULATION.**

  A.   **Statutory Maximum Sentences.**

  **Distribution and Attempted Distribution (Count One)**

  The statutory maximum and mandatory minimum sentence is 20 years', with a mandatory 5 years' imprisonment, a mandatory minimum of 15 years' imprisonment, a mandatory minimum 5 years' up to a lifetime of supervised release, mandatory restitution in an amount of at least $3,000 per victim pursuant to 18 U.S.C. § 2259(b)(2)(B), forfeiture, a $100 special assessment, and, if found not to be indigent, an additional mandatory $5,000 special assessment under the Justice for Victims of Trafficking Act, 18 U.S.C. § 3014, and up to $17,000 in additional assessments pursuant to 18 U.S.C. § 2259A(a)(1), forfeiture, a 250,000 fine, and a $100 special assessment.

  **Possession of Child Pornography, 18 U.S.C. § 2252(a)(4)(B) (Count Twelve)**

  The statutory maximum and mandatory minimum penalties 20 years' imprisonment, a mandatory minimum 5 years' up to a lifetime of supervised release, mandatory restitution in an amount of at least $3,000 per victim pursuant to 18 U.S.C. § 2259(b)(2)(B), and, if found not to be indigent, an additional mandatory $5,000 special assessment under the Justice for Victims of Trafficking Act, 18 U.S.C. § 3014, and up to $17,000 in additional assessments pursuant to 18 U.S.C. § 2259A(a)(1), forfeiture, a 250,000 fine, and a $100 special assessment.

  B.   **Sentencing Guidelines Calculation by the U.S. Probation Department.**

  The Probation Office correctly calculated the defendant's advisory Guideline range at 151-188 months' incarceration, as follows:

| Group One (Counts One and Twelve) | Base offense level, USSG § 2G2.2(a) | 22 |
|---|---|---|
| | Victim under the age of 12 years, § 2G2.2(b)(2) | +2 |
| | Offenses involved distribution § 2G2.2(b)(3(F) | +2 |
| | Images portray sadistic or masochistic conduct | +4 |
| | Use of a Computer | +2 |

|  | Images in excess of 600, § 2G2.2(b)(7)(D) | +5 |
|  | Total Offense Level | 37 |
|  |  |  |
|  | Acceptance of responsibility and timely notification | -3 |
|  |  |  |
| Adjusted Offense Level |  | **34** |
| Criminal History Category | 0 criminal history points, | Category I |
|  |  |  |
| **FINAL GUIDELINE RANGE** |  | **151-188 months** |

## IV. <u>SENTENCING ANALYSIS</u>.

A thorough consideration of the sentencing factors set forth in 18 U.S.C. § 3553(a) suggests that the most appropriate sentence is one called for by his calculated Guideline range, namely a 151-month term of imprisonment. The Supreme Court has declared: "As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark." *Gall v. United States*, 128 S. Ct. 586, 596 (2007). Thus, the Sentencing Guidelines remain an indispensable resource for assuring appropriate and uniform punishment for federal criminal offenses.

**<u>Consideration of the 3553(a) Factors</u>.**

This Court must consider all of the sentencing considerations set forth in Section 3553(a). Those factors include: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (3) the need to afford adequate deterrence to criminal conduct, and to protect the public from further crimes of the defendant; (4) the need to provide the defendant with educational or vocational training, medical care, or other correctional treatment in the most effective manner; (5) the

guidelines and policy statements issued by the Sentencing Commission; (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (7) the need to provide restitution to any victims of the offense. 18 U.S.C. § 3553(a).[2]

### A. *The nature and circumstances of the offenses.*

Child sexual exploitation crimes are undisputedly grave offenses. As the Supreme Court has explained, "[c]hild pornography harms and debases the most defenseless of our citizens. Both the State and Federal Government have sought to suppress it for many years, only to find it proliferating through the new medium of the Internet." *United States v. Williams*, 553 U.S. 285, 307 (2008). Congress, too, has explained the difficulties in successfully combating the "immense" problem of child pornography and the "rapidly-growing market" for such materials, which is fueled by new technologies that were largely unavailable when the Sentencing Guidelines were first promulgated. *See S. Rep. No. 108-2 (2003).* Congress has repeatedly expressed its dismay about the "excessive leniency" of federal sentences, *see H. Rep. No. 108-66; S. Rep. No. 104-358*, especially in light of the continuing harm caused to the children appearing in such materials, as well as the inflammatory effect it has on the "desires of child molesters, pedophiles, and child pornographers" which results in a robust and growing market for child pornography and therefore increased abuse of innocent children. *See Child Pornography Prevention Act of 1996,* Pub. L. No. 104-208, § 121, 110 Stat. 3009, 3009-26, 27

---

[2] Further, the "parsimony provision" of Section 3553(a) states that "[t]he court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection." The Third Circuit has held that "district judges are not required by the parsimony provision to routinely state that the sentence imposed is the minimum sentence necessary to achieve the purposes set forth in § 3553(a)(2). . . . '[W]e do not think that the "not greater than necessary" language requires as a general matter that a judge, having explained why a sentence has been chosen, also explain why some lighter sentence is inadequate.'" *United States v. Dragon*, 471 F.3d 501, 506 (3d Cir. 2006) (quoting *United States v. Navedo-Concepcion*, 450 F.3d 54, 58 (1st Cir. 2006)).

(1996), codified at 18 U.S.C. § 2251 note; *United States v. MacEwan*, 445 F.3d 249, 250 (3d Cir. 2006); *United States v. Norris*, 159 F.3d 926, 929 (5th Cir. 1998) ("[T]he victimization of the children involved does not end when the pornographer's camera is put away.").

Each view, download and distribution of child pornography re-victimizes the children who were abused to create that particular piece of child pornography. In *United States v. MacEwan*, 445 F.3d 237, 249-50 (3d Cir. 2006), the Third Circuit upheld the defendant's admittedly "harsh" sentence for distributing and possessing child pornography based, in large part, on the extreme harm to the children who are victims of sexual abuse because:

> "'where children are used in its production, child pornography permanently records the victim's abuse, and its continued existence causes the child victims of sexual abuse continuing harm by haunting those children in future years." Moreover, Congress found little distinction in the harm caused by a pedophile, be he a distributor or mere consumer in child pornography, because the mere 'existence of and traffic in child pornographic images creates the potential for many types of harm in the community and presents a clear and present danger to all children.' … Furthermore, 'it inflames the desires of ... pedophiles ... who prey on children, thereby increasing the creation and distribution of child pornography and the sexual abuse and exploitation of actual children who are victimized as a result of the existence and use of these materials."
> (Internal citations omitted.)

There can be no question that the defendant engaged in serious crimes. Each image and video he downloaded and collected was created from the horrific abuse of young children to provide "pornography" for people like the defendant. Zenszer exacerbated the harm to the child victims by distributing to other like-minded individuals. Given the scope of the internet their exploitation is endless.

B.  **The history and characteristics of the defendant**

The history and characteristics of this defendant support a significant sentence. Though this is the defendant's first criminal conviction, he committed these crimes many times over an

extended two-year period. Indeed, even when his Kik had shut down the MUCHBETTERTHANEMAIL account Zenszer started the "JAMESDEAN14035," account and continued to possess and distribute child pornography. And yet, his Guidelines in this case have been calculated as a first-time sex offender. The Guidelines already reflect the fact that he has no prior criminal record. He should not now receive any additional consideration. *See United States v. Borho*, 485 F.3d 904 (6th Cir. 2007) (There were no "extraordinary circumstances" that justified a decreased sentence based on, among other considerations, the defendant's lack of a criminal history, lack of evidence that he had ever molested a child, and a sex offender risk assessment that opined that the defendant was at low risk for re-offending); *United States v. Peterson*, 83 Fed.App'x. 150 (8th Cir. 2003) (appeals court reversed District Court's downward departure based on the low likelihood for re-offense and susceptibility to abuse in prison, as the first factor was already accounted for in the Guidelines and the second factor was inapplicable to the facts of the case); *United States v. Goldberg,* 295 F.3d 1133 (10th Cir. 2002) (defendant's lack of prior record, and low risk of recidivism are not valid grounds for downward departure because those factors are all taken into account in the Guidelines themselves). Zenszer's lack of a prior record should not provide any basis to vary from the Guideline range, based on the facts of this case.

The vast majority of federal child pornography offenders have no prior records at all at the time that they are sentenced. *See U.S. Sentencing Commission, Report to Congress: Mandatory Minimum Penalties in the Federal Criminal Justice System 320* (2011) available at http://www.ussc.gov/Legislative_and_Public_Affairs/Congressional_Testimony_and_Reports/Mandatory_Minimum_Penalties/20111031_RtC_Mandatory_Minimum.cfm. . This puts defendant Zenszer squarely in the heartland of most sex offenders in federal court

The defendant was raised in a household where he recounted witnessing domestic abuse at the hands of his father, who he described as a heavy drinker, strict disciplinarian who was always angry. He describes that his upbringing left him with severe fear and anxiety. He further describes being the victim of his brother's sexual abuse beginning at age six and continuing until age ten. He asserts that he never reported the abuse to anyone because he was scared and embarrassed and described how he "never really dealt with it."

The defendant was in the United States Coast Guard, with active deployment to Louisiana after the Deep Water Horizon oil spill. He was honorably discharged in 2010.

From February 12, 2007, thru his dismissal on November 21, 2024, the defendant was employed as a Septa Police Officer. As an officer, the defendant held a position of trust. His crimes stand in stark contrast to the core principals of police work – protect and serve. So deeply invested in purveying child sexual abuse materials, the defendant admitted to engaging in the behavior while on duty.

The defendant describes how his work on the police force exposed him to a tremendous amount of violence which led to post traumatic stress, anxiety, and depression. He describes planning on committing suicide but decided against it because of the impact it would have on his family. He resisted getting any help for fear of losing his job or appearing weak. Instead, he withdrew from his family and became more isolated. It appears that his interest in child pornography began about two years ago and continued unabated until his arrest.

To the defendant's credit, when he was arrested, he was very cooperative and admitted his involvement immediately. He provided the passwords for his phone and Telegram account and gave a full Mirandized statement. Unlike many who find themselves similarly situated, the

defendant appears to appreciate and acknowledge the harm his crimes have caused and is very remorseful.

C. **The seriousness of the offense, respect for the law, and just punishment.**

A significant term of imprisonment is required "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense." § 3553(a)(2). This defendant's crimes are among the most serious. He downloaded, possessed, and distributed child pornography for more than two years, during the time when he was supposed to be protecting the community. This warrants a significant sentence and a lengthy period of 10 tears of supervised release.

D. **Deterrence**

Deterrence is also one of the factors driving the sentence in this case, and a sentence within the Guideline range would address this concern. Zenszer himself needs to be deterred from continuing his conduct of sexually exploiting children.

Section 3553(a)(2) also mandates that the Court consider a sentence that adequately deters others who would commit similar offenses. The sentence in this case must give notice that the sexual abuse and exploitation of children has serious and significant consequences. A term of incarceration called for by the Guidelines in this case will serve as a deterrent to those who may contemplate the consequences of sexually abusing or exploiting a child.

E. **Other considerations.**

There is no need in this case to adjust the sentence in order "to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner . . . ." § 3553(a)(2)(D). The defendant requires mental health treatment and sex offender treatment and he should be encouraged to take advantage of the services

available through the Bureau of Prisons. Every BOP facility provides some level of mental health treatment, and for sex offenders, there is specialized treatment at BOP facilities, including the Sexual Offender Management Program ("SOMP") which is staffed by highly trained psychiatric professionals. *Id.* If the defendant truly desires mental health treatment, he can avail himself of such treatment during his imprisonment and after his release, while under his term of supervised release.

### F. Restitution.

The government is in the process of having discussions with the defense about an agreement regarding restitution. We will provide an update to the court.

## V. CONCLUSION

For all of the reasons outlined above, the appropriate considerations of sentencing favor the imposition of a sentence of incarceration within the Guideline range.

> Respectfully submitted,
>
> DAVID METCALF
> United States Attorney
>
>
> */s Maureen McCartney*
> Maureen McCartney
> Assistant United States Attorney

**CERTIFICATE OF SERVICE**

I hereby certify that on this date I caused a true and correct copy of the foregoing Government's Sentencing Memorandum to be served by email and through the electronic filing system upon counsel for defendant:

    David Bahuriak
    david@bahuriak

    */s Maureen McCartney*
    Maureen McCartney
    Assistant United States Attorney

Date: July 23, 2025.